STATE OF CONNECTICUT *v.* RAYMOND HAVICAN
(13540)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued October 31, 1989—decision released January 30, 1990

*David F. Egan,* public defender, for the appellant (defendant).

*Mary H. Lesser,* deputy assistant state's attorney, with whom was *John Connelly,* state's attorney, for the appellee (state).

CALLAHAN, J. The sole issue in this appeal is whether the trial court erred in not instructing the jury that the defendant could use deadly physical force if reasonably necessary to repel a forcible sexual assault. The defendant, Raymond Havican, was convicted by a jury of murder in violation of General Statutes § 53a-54a[1] and sentenced to life imprisonment. He appeals from the judgment rendered on the verdict. We find error.

---

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

On appeal, the defendant claims that the trial court erred when, in disregard of his request, it instructed the jury on self-defense and defined the term "great bodily harm" only in terms of "serious physical injury" and thereby excluded self-defense based solely upon the threat of homosexual rape as a basis for finding the defendant not guilty. "When we are reviewing a trial court's failure to charge as requested, 'we must adopt the version of the facts most favorable to the defendant which the evidence would reasonably support.' *State* v. *Anonymous (1977-9),* 34 Conn. Sup. 612, 616, 380 A.2d 7 (1977); see *State* v. *Cassino,* 188 Conn. 237, 239, 449 A.2d 154 (1982); *State* v. *Arroyo,* 181 Conn. 426, 430, 435 A.2d 967 (1980)." *State* v. *Fuller,* 199 Conn. 273, 275, 506 A.2d 556 (1986).

The defendant testified that on the evening of May 12, 1987, he was hitchhiking south on Route 8 in Waterbury when he was picked up by the victim, Harold Sanders. The defendant told the victim that he wanted a ride to the Union City exit on Route 8. Instead of following the defendant's instructions, however, the victim drove past the Union City exit and got off at the next exit. He then traveled up Maple Street in Naugatuck and locked the doors of the car. As he was driving, the victim grabbed the defendant in the groin area and private parts. The defendant pushed the victim away and demanded to be let out of the car.

Instead, the victim continued to make numerous aggressive advances toward the defendant. At this point, the defendant produced a gun and warned the victim to stop. The victim stopped momentarily, but instead of driving the defendant to his original destination, abruptly turned down a street in a remote area, pulled into a dirt logging road and stopped. The defendant was terrified and tried to get out of the car but was unable to do so because its doors were still locked. The victim then lunged at the defendant, pinning his shoul-

ders against the car door. At that point the defendant fired one shot from his revolver. The victim was momentarily stunned by the shot but continued to come towards the defendant. The defendant then hit the victim with the gun numerous times and fired his remaining five shots. Still terrified, he then managed to unlock the car door, extricate himself from the automobile's interior and run.

After fleeing "a couple of hundred yards down the road," the defendant decided to return to the car to hide the body. He did so by removing the victim's body from the car and covering it with brush. Thereafter, the defendant drove the victim's car to Florida. When the victim's body was found, his penis was exposed. No jewelry or money had been taken from the decedent.

At trial, the court based its instructions to the jury, concerning the use of deadly force in self-defense, on General Statutes § 53a-19.[2] The trial court stated that

---

[2] "[General Statutes] Sec. 53a-19. USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such

the defendant could use deadly physical force if he reasonably believed that the victim was (1) using or about to use deadly physical force or (2) inflicting or about to inflict great bodily harm. The trial court then proceeded to define great bodily harm by reciting the definition of serious physical injury set forth in General Statutes § 53a-3 (4). It instructed the jury that: "Great bodily harm is equivalent to serious physical injury, which means physical injury which creates a substantial risk of death or which creates serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ." See General Statutes § 53a-3 (4). The defendant duly objected to the definition of "great bodily harm" included in the jury charge. The defendant requested the court either: (1) to leave the term "great bodily harm" undefined or (2) "to define great bodily harm in connection with sexual assault in the first degree."

"If the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction. [*State* v. *Rosado,* 178 Conn. 704, 707–708, 425 A.2d 108 (1979)]. '[A] defendant is "entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . . " *United States* v. *Platt,* 435 F.2d 789, 792 (2d Cir. 1970), quoting *United States* v. *O'Connor,* 237 F.2d 466, 474 n.8 (2d Cir. 1956).' *United States* v. *Alfonso-Perez,* 535 F.2d

other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

1362, 1365 (2d Cir. 1976). 'A fundamental element of due process is the right of a defendant charged with a crime to establish a defense. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) . . . . ' *State* v. *Miller,* 186 Conn. 654, 660, 443 A.2d 906 (1982)." *State* v. *Fuller,* supra, 278. When the legislature has created a legally recognized defense, the defendant is entitled to a proper jury instruction on the elements of that defense so that the jury may ascertain whether the state has sustained its burden of disproving the defense beyond a reasonable doubt. Id.; *State* v. *Miller,* supra, 660–61.

We therefore must first ascertain whether, under our law, a person may use deadly physical force when he reasonably believes that he is about to be forcibly sexually assaulted. Our self-defense statute, General Statutes § 53a-19, sets forth the circumstances in which a person is justified in using deadly physical force. In discussing the codification of the law of self-defense in § 53a-19, we have said that "[t]he statutes which enumerate the situations where the use of force is justified 'attempt to restate the common law. They should be read in the light of their common law background, and the fact that an individual section does not fully state the relevant common law rule, with all its possible applications, exceptions or implications, should not prevent a court from reading it as incorporating the full body of common law rules relevant thereto.' Commission to Revise the Criminal Statutes, Connecticut Penal Code Comments 5-6 (1972)." *State* v. *Shaw,* 185 Conn. 372, 379, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982); *State* v. *Corchado,* 188 Conn. 653, 661–62, 443 A.2d 427 (1982). Similarly, our rules of statutory construction tell us that " '[n]o statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon

the common law which it does not fairly express.' *Dennis* v. *Shaw,* 137 Conn. 450, 452, 78 A.2d 691 (1951), quoting *Shaw* v. *Railroad Co.,* 101 U.S. 557, 565, 25 L. Ed. 892 (1879)." *Yale University School of Medicine* v. *Collier,* 206 Conn. 31, 37, 536 A.2d 588 (1988).

At common law, a person could justifiably use deadly force in self-defense of sodomy and rape.[3] See 40 C.J.S., Homicide § 101. We have stated that, "[t]he class of crimes in prevention of which a man may, if necessary, exercise his natural right to repel force by force to the taking of the life of the aggressor, are felonies which are committed by violence and surprise; such as murder, robbery, burglary, arson, breaking a house in the day time with intent to rob, sodomy and rape. Blackstone says: 'Such homicide as is committed for the prevention of any forcible and atrocious crime is justifiable by the law of nature; and also by the law of England, as it stood as early as the time of Bracton . . . .' " *State* v. *Moore,* 31 Conn. 479, 483 (1863). Thus, § 53a-19 codified the common law rule that a person can justifiably use deadly force in self-defense of sodomy and rape.

The state agrees with this proposition but nevertheless argues that the trial court's charge need not have specifically mentioned that the defendant was in fear of being forcibly sexually assaulted. In other words, the state claims that a jury charge is adequate as long as it mentions that a defendant must be in fear of great bodily harm or death. The state further claims that the trial judge's definition of great bodily harm solely in

---

[3] "Short of homicide, [rape] is the 'ultimate violation of self.' It is also a violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist. Rape is very often accompanied by physical injury to the [victim] and can also inflict mental and psychological damage." *Coker* v. *Georgia,* 433 U.S. 584, 597–98, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977).

terms of serious physical injury did not exclude homo-sexual rape as one of the circumstances that would give rise to a reasonable belief that the aggressor was about to inflict great bodily harm. We disagree.

Neither § 53a-19 nor Connecticut case law defines "great bodily harm." We therefore must first address whether "great bodily harm" is equivalent to "serious physical injury." In doing so, we recognize that " 'in construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978); *Catino* v. *Board of Education,* 174 Conn. 414, 418, 389 A.2d 754 (1978)'; *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 231–32, 477 A.2d 988 (1984)." *Hayes* v. *Smith,* 194 Conn. 52, 58, 480 A.2d 425 (1984).

Section 53a-19 allows an actor to use deadly physical force only when "the actor reasonably believes that such other person is (1) using or about to use deadly physical force, *or* (2) inflicting or about to inflict great bodily harm." (Emphasis added.) General Statutes § 53a-3 (5) defines "deadly physical force" as "physical force which can be reasonably expected to cause death or *serious physical injury.*" (Emphasis added.) Thus, the definition of deadly physical force in § 53a-3 (5) encompasses the term "serious physical injury." If a deadly physical force includes one likely to cause "serious physical injury," the term "great bodily harm" must mean something else. Otherwise, it would be mere surplusage. Furthermore, it would be illogical to assume that the legislature intended the definition of deadly physical force in § 53a-3 (5), which expressly relates only to "serious physical injury," to also include "great bodily harm." Thus, we conclude that the threat of great bodily harm and the threat of

serious physical injury are two separate grounds that each justify the use of deadly force in self-defense.

We find additional support for our conclusion in the history of our self-defense statute. Section 53a-19 is largely a product of the legislature's revision of our penal code in 1969. "[T]he drafters of the [Connecticut penal] code relied heavily upon the Model Penal Code and various state criminal codes, especially the penal code of New York. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1969 Sess., p. 11." *State* v. *Hill,* 201 Conn. 505, 517, 523 A.2d 1252 (1986). Thus, we may turn to the parallel statutory provisions set forth in the Model Penal Code and the New York Revised Penal Law, effective September 1, 1967, for guidance. *State* v. *Hill,* supra, 516–17; *In re Juvenile Appeal (Docket No. 9268),* 184 Conn. 157, 163–64 nn. 8–9, 439 A.2d 958 (1981).

Both the New York penal code and the Model Penal Code recognize that a forcible sexual assault may be repelled by deadly physical force. Furthermore, New York has recognized that the imminent threat of deadly physical force[4] and the threat of forcible sodomy are two distinct grounds for the justified use of deadly physical force. *People* v. *Coleman,* 122 App. Div. 2d 568, 569, 504 N.Y.S.2d 949 (1986) (the trial court's jury charge was erroneous because it gave an instruction only as to the threat of the imminent use of deadly physical force when the evidence also raised an issue of fact as to the threat of attempted forcible sodomy). Similarly, the Model Penal Code lists the threat of forcible sexual intercourse and the threat of serious bodily injury as two separate justifications for the use of deadly force. Model Penal Code § 3.04 (2) (b). Rather than delineate the specific felonies which may be

---

[4] New York's definition of deadly physical force is identical to Connecticut's in that it also embodies the term "serious physical injury."

defended against by the use of deadly physical force, as was done in the New York penal code and the Model Penal Code, the Connecticut legislature chose to utilize the term "great bodily harm." In doing so, however, the legislators recognized that they were not setting forth an all-inclusive list of offenses that would justify the use of deadly physical force. See Commission to Revise the Criminal Statutes, supra.

Accordingly, we conclude that the definition of serious physical injury included in the jury charge was too restrictive and did not fully encompass the threat of sexual assault. See *State* v. *Hunter,* 305 N.C. 106, 114, 286 S.E.2d 535 (1982) (a male who is put in fear of homosexual assault is put in fear of great bodily harm). "[R]ape is so often accompanied by extreme physical and emotional brutality that it carries with it the explicit or implicit threat of great bodily harm." *People* v. *Landrum,* 160 Mich. App. 159, 165, 407 N.W.2d 614 (1986), vacated, 430 Mich. 861, 420 N.W.2d 573, aff'd on reconsideration, 171 Mich. App. 148, 429 N.W.2d 818 (1988). In *People* v. *Landrum,* supra, 164, the court instructed the jury that, "the degree of danger which must be feared is serious bodily harm or death." On appeal, the court held that "the instruction given did not conform to [the] defendant's actual theory of self-defense." Id., 165. Rather, the trial court should have instructed the jury that the "defendant could use deadly force if necessary to repel sexual assault involving forced penetration as well as serious bodily harm or death." Id., 165–66.[5]

---

[5] Further, even the statutory definition of sexual assault in the first degree does not contemplate that a person must be in fear of "serious physical injury." General Statutes § 53a-70 (a) provides: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear *physical injury* to such person or a third person." (Emphasis added.)

The standard of review that we apply to this constitutional due process claim is whether it is reasonably possible that the jury was misled. *State* v. *DeJesus,* 194 Conn. 376, 388, 481 A.2d 1277 (1984); *State* v. *Corchado,* supra, 660. " 'The primary purpose of the charge to the jury is to assist them in applying the law correctly to the facts which they find to be established.' *Velardi* v. *Selwitz,* 165 Conn. 635, 637, 345 A.2d 527 (1974)." *State* v. *Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980).

The defendant testified that the victim had grabbed his groin and private parts. Furthermore, he testified that despite his protestations, the victim lunged toward him to pin him against the car door. Since the defendant's testimony must be viewed in the light most favorable to supporting his request to charge; *State* v. *Fuller,* supra, 279; it might, if believed, have provided sufficient evidence for the jury to conclude that the defendant's use of deadly physical force was necessary to defend against the imminent threat of forcible sexual assault. The court's charge, however, significantly restricted the opportunity for the jury to assess whether the imminent threat of forcible sexual assault justified the use of deadly physical force in self-defense. The trial court's limitation of great bodily harm to serious physical injury effectively deprived the defendant of the clear opportunity to present a legally recognized defense. Because it is reasonably possible that, in this case, the jury was misled by the instructions; *State* v. *Corchado,* 660; we find error. An instruction that the threat of forcible sexual assault in the first degree constituted a threat of great bodily harm and was a defense to the crime charged would have enabled the jury to make a reasoned and guided assessment of the application of the defense of self-defense in these circumstances. We are not persuaded that the trial court's equation of great bodily harm with serious physical

injury sufficiently instructed the jury on the use of deadly physical force in self-defense against the threat of forcible sexual assault.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other justices concurred.