# STATE OF CONNECTICUT *v.* CHARLES WILLIAMS
## (SC 16415)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued May 30—officially released September 4, 2001

*Robin S. Schwartz*, special deputy assistant state's attorney, with whom, on the brief, were *James Thomas*, state's attorney, and *George Ferko*, assistant state's attorney, for the appellant (state).

*Carlos E. Candal,* special assistant public defender, with whom, on the brief, was *Mark Rademacher*, assistant public defender, for the appellee (defendant).

*Opinion*

NORCOTT, J. The state appeals, following a grant of certification, from the judgment of the Appellate Court reversing the conviction of the defendant, Charles Williams, on the charge of criminal possession of a firearm in violation of General Statutes (Rev. to 1999) § 53a-217.[1] The state claims that the Appellate Court improp-

---

[1] General Statutes (Rev. to 1999) § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm or electronic defense weapon when he possesses a firearm or electronic defense weapon and (1) has been convicted of . . . a class D felony . . . ."

erly determined that the trial court inappropriately had refused the defendant's requested jury instruction regarding the doctrine of nonexclusive possession.[2] *State* v. *Williams*, 59 Conn. App. 771, 785, 758 A.2d 400 (2000). The state also claims that the trial court's failure to provide the jury with the requested instruction, if improper, was harmless. We conclude that, under the circumstances of this case, the defendant was not entitled to an instruction regarding the doctrine of nonexclusive possession and, therefore, we reverse the judgment of the Appellate Court.

The opinion of the Appellate Court contains the following facts that a jury reasonably could have found. "On January 26, 1999, Officer Andrew Lawrence of the Hartford police department was driving in his patrol car when he observed the defendant drive through a stop sign. Lawrence activated his lights and siren, called for backup and pursued the defendant. The defendant pulled into a driveway, got out of the car and knocked on the door or rang the doorbell of a [private] home. Soon thereafter, the defendant walked away from the house and proceeded down the street, leaving the car in the driveway.

"Lawrence did not follow the defendant. Instead, while monitoring the defendant as he was walking away, Lawrence approached the vehicle and looked through the car window. Inside, he saw a .38 caliber semiautomatic pistol on the driver's seat. Once backup officers arrived, Lawrence pursued the defendant while the car was secured by the other officers. Lawrence caught up with the defendant, who had since rounded a street corner, and arrested him.

---

[2] See, e.g., *State* v. *Alfonso*, 195 Conn. 624, 633, 490 A.2d 75 (1985) (concluding that, if defendant not in exclusive possession of premises where contraband found, jury may not infer that defendant knew of presence of contraband and had control thereof " 'unless there are other incriminating statements or circumstances tending to buttress such an inference' ").

"The state filed a two count information alleging that the defendant used a motor vehicle without the owner's permission in violation of General Statutes § 53a-119b (a) (1)[3] and that the defendant was in criminal possession of a firearm in violation of § 53a-217 (a) (1). On May 25, 1999, the defendant filed a motion to suppress all items seized by the police.[4] The trial court's signed oral decision on the motion to suppress focused on the issue of whether the 'viewing of a weapon in plain view of the driver's seat of a vehicle [constituted] probable cause to arrest the operator of said vehicle for the crime of weapon in a motor vehicle in violation of [General Statutes] § 29-38[5] . . . .' The court denied the motion on July 16, 1999." Id., 773. A jury trial commenced on July 20, 1999.

"At the end of the state's case, the defendant moved for a judgment of acquittal on both counts. The trial court granted the motion as to the first count of using a motor vehicle without the owner's permission, but denied the motion as to the second count of criminal possession of a firearm." Id., 774.

[3] General Statutes § 53a-119b (a) provides in relevant part: "A person is guilty of using a motor vehicle without the owner's permission when: (1) He operates or uses, or causes to be operated or used, any motor vehicle unless he has the consent of the owner . . . ."

[4] The defendant sought to suppress the firearm and ammunition as well as items seized from his person following a search incident to his arrest, including a cellular telephone and $1890 in cash. The defendant also sought to suppress evidence concerning the key to the vehicle that had been found in his pocket.

[5] General Statutes § 29-38 provides in relevant part: "(a) Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 or any machine gun which has not been registered as required by section 53-202, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon, pistol or revolver, or machine gun in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. . . ."

Thereafter, the defendant presented evidence "to dispute the issue that the weapon found in the car was in his exclusive possession.[6] At the time of his arrest, the defendant [allegedly had been seen by Lawrence] driving a rental car owned by National Car Rental. Tammy Dinatale, a representative of National Car Rental, testified that at the time the weapon was found in the car, the vehicle was rented to another individual, [Kirk] Scott.

"The defense also presented Madeline Williams, the defendant's sister, as a witness. Williams testified [that at] approximately 9 a.m. on the morning of the defendant's arrest, Williams drove herself and the defendant out to breakfast in her own car. Afterwards, the defendant asked Williams to bring him to a friend's house, Scott, to get a compact disc [that he previously had loaned to Scott]." Id., 783–84. According to Williams, she and "the defendant drove to Scott's house, and Williams accompanied the defendant to Scott's residence. Scott handed the defendant a key to the rental car. Williams and the defendant then proceeded to the rental car to retrieve the compact disc from the vehicle. At that point, before Williams and the defendant reached the vehicle, the officer approached the defendant and arrested him." Id., 784.

"On July 20, 1999, the defendant filed a request to charge the jury on the theory of nonexclusive possession, which was denied the following day by the court.[7]

---

[6] The defendant stipulated to the fact that he had been convicted of burglary in the third degree, a class D felony, prior to his arrest in this case. See General Statutes §§ 53a-103 and 53a-103a. Thus, the only disputed issues at trial were the operability of the firearm and the defendant's possession thereof.

[7] Specifically, the defendant requested that the trial court instruct the jury that "[w]here the defendant is not in exclusive possession of the [vehicle wherein] the firearm was found, you may not infer that he knew of its presence and that he had control of it, unless he made some incriminating statement, or unless there are [some] other circumstances [that] tend to support such an inference." The trial court denied that request and indicated that " 'what I am going to charge [the jury] . . . is that possession means intentional dominion and control over the firearm accompanied by knowl-

The jury returned a guilty verdict on July 21, 1999." Id., 774. The defendant then filed a postverdict motion for judgment of acquittal. Id. The trial court denied that motion and rendered judgment in accordance with the jury verdict sentencing the defendant to five years imprisonment.

The defendant appealed to the Appellate Court, claiming that the trial court improperly had: (1) denied his motion to suppress; (2) denied his motion for judgment of acquittal; and (3) refused to instruct the jury concerning the defense of nonexclusive possession. Id., 772. The Appellate Court held that the trial court properly had denied the defendant's motion to suppress and his motion for judgment of acquittal. Id., 776, 778. The Appellate Court concluded, however, that the trial court improperly had refused to instruct the jury on the defendant's theory of nonexclusive possession. Id., 778. According to the Appellate Court, the testimony of Williams "contradicted the sequence of events offered by the state and raised the issue of the defense of nonexclusive possession." Id., 784. The Appellate Court, therefore, reversed the judgment of conviction and remanded the case for a new trial. Id., 785. This certified appeal followed.

We granted the state's petition for certification to appeal limited to the following issues: "(1) Did the Appellate Court properly conclude that the defendant was entitled to a jury instruction regarding the doctrine of nonexclusive possession? (2) If the answer to ques-

---

edge of its character. Mere presence in the vicinity of the firearm, however, is not enough to establish possession. . . . [I]f that's what your claim is, that will be covered in the charge that I plan on giving. . . . I am going to charge [that] mere presence in the vicinity of a firearm, however, is not enough to establish possession. So to that end I am going to deny the request, your specific request to charge under the exclusive possession section because I think it is adequately covered in the charge that I am going to give under the elements of the crime.' " *State* v. *Williams*, supra, 59 Conn. App. 779–80 n.3.

tion one is 'yes,' was the error harmless?" *State* v. *Williams*, 254 Conn. 952, 762 A.2d 906 (2000). We conclude that the defendant was not entitled to a jury instruction regarding the doctrine of nonexclusive possession and, accordingly, we reverse the judgment of the Appellate Court.[8]

The state contends that a jury instruction regarding the doctrine of nonexclusive possession was not warranted because there was no evidence produced at trial to support the claim that the defendant and at least one other individual shared joint access to the weapon. The defendant, however, insists that the Appellate Court properly determined that he was entitled to the requested instruction because there was evidence presented that, if believed, would support a finding that he did not have exclusive possession of the vehicle in which the weapon was found. We agree with the state.

"Where the defendant is not in exclusive possession of the premises where the [illegal item is] found, it may not be inferred that [the defendant] knew of the presence of the [illegal item] and had control of [it], unless there are other incriminating statements or circumstances tending to buttress such an inference. *Evans* v. *United States*, 257 F.2d 121, 128 (9th Cir.), cert. denied, 358 U.S. 866, 79 S. Ct. 98, 3 L. Ed. 2d 99, reh. denied, 358 U.S. 901, 79 S. Ct. 221, 3 L. Ed. 2d 150 (1958) . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Delossantos*, 211 Conn. 258, 277, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989); see *State* v. *Berger*, 249 Conn. 218, 225, 733 A.2d 156 (1999) (same); *State* v. *Alfonso*, 195 Conn. 624, 633, 490 A.2d 75 (1985) (same). The doctrine of nonexclusive possession "was designed

---

[8] Because of our conclusion that no error occurred in denying the defendant's request to charge the jury on the doctrine of nonexclusive possession, we need not address the second certified issue.

to prevent a jury from inferring a defendant's possession of [an illegal item] solely from the defendant's nonexclusive possession of the premises where the [illegal item was] found." *State* v. *Nesmith*, 220 Conn. 628, 636 n.11, 600 A.2d 780 (1991). When the doctrine applies, an instruction focuses the jury's attention on the defendant's knowledge and intent to possess, precluding it from inferring possession from the mere fact that the defendant, along with others, occupied or had access to the premises wherein the contraband was found. See *United States* v. *McKissick*, 204 F.3d 1282, 1291 (10th Cir. 2000) (proof of nonexclusive constructive possession alone insufficient to justify implication of knowledge; state must present some corroborating evidence of knowledge); *Chicone* v. *State*, 684 So. 2d 736, 740 (Fla. 1996) (same); see also *State* v. *Hill*, 201 Conn. 505, 516, 523 A.2d 1252 (1986) ("[t]he essence of exercising control is not the manifestation of an act of control but instead it is the act of being in a position of control coupled with the requisite mental element").

"As a general rule, a defendant is entitled to have instructions on a defense for which there is evidence produced at trial to justify the instruction, no matter how weak or incredible the claim." *State* v. *Varszegi*, 236 Conn. 266, 282, 673 A.2d 90 (1996); see *State* v. *Havican*, 213 Conn. 593, 597, 569 A.2d 1089 (1990) (" '[i]f the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction' "). As a specific matter, in deciding whether the trial court improperly failed to provide the jury instruction on nonexclusive possession of the premises, as requested by the defendant, "we must adopt the version of the facts most favorable to the defendant which the evidence would reasonably support." (Internal quotation marks omitted.) *State* v. *Henning*, 220 Conn. 417, 428,

599 A.2d 1065 (1991); see also *State* v. *Lewis*, 245 Conn. 779, 810, 717 A.2d 1140 (1998); *State* v. *Edwards*, 234 Conn. 381, 389, 661 A.2d 1037 (1995).

Our decision in *State* v. *Nesmith*, supra, 220 Conn. 628, is illustrative of these principles and presents a similar scenario to the present case. In *Nesmith*, the defendant had been charged with possession of narcotics in conjunction with his arrest in a vacant apartment known by police to harbor drug users. Id., 629–30. At the time of his arrest, from six to eleven people had occupied the front room of the abandoned apartment. Id., 630. Upon seeing the police enter, the defendant attempted to move toward an unoccupied room in the rear of the apartment. Id. An officer pursued the defendant into the empty room and witnessed him drop something to the floor. Id. After restraining the defendant and ordering him to return to the front room where other officers had detained the other occupants of the apartment, the officer investigated the back room further and found a number of envelopes and plastic vials containing narcotics on the floor. Id.

The defendant's testimony at trial directly contradicted the state's version of the facts. According to the defendant, he was waiting for a friend in the hallway outside the apartment when a police officer grabbed him and brought him inside the apartment. Id., 630–31. The defendant claimed that he was then directed to sit on the floor with approximately eleven other detainees. Id., 631. While sitting with the other detainees, the defendant explained, he had observed the man next to him drop the narcotics. Id. The defendant, therefore, requested a jury charge on the doctrine of nonexclusive possession. Id., 633. The trial court refused to provide such a charge and the defendant was convicted. Id.

In affirming the judgment of conviction, the Appellate Court reasoned that "[t]he common factor in cases that

have applied [the doctrine of nonexclusive possession] is the fact that the narcotic substances were accessible to others and were found in areas that were also occupied by others." *State* v. *Nesmith*, 24 Conn. App. 158, 161, 586 A.2d 628 (1991). The Appellate Court noted, however, that the defendant had been charged only with possession of the narcotics found in the back room. Because no evidence was adduced at trial to demonstrate that any other person had been present in the back room, the situation was not one involving nonexclusivity. Id., 161–62. Thus, the Appellate Court concluded that the trial court properly refused to give the requested charge. Id., 162.

We affirmed the Appellate Court, explaining that the version of the facts most favorable to the defendant "established possession of the narcotics without requiring that the jury draw an inference based solely on the defendant's presence on the premises." *State* v. *Nesmith*, supra, 220 Conn. 633–34. We acknowledged that two conflicting stories had been presented through the evidence, each of which identified a different individual as the person discarding the drugs. Id., 635–36. The jury, as fact finder, was entitled to believe the story that it found credible. We concluded that "there was no risk that the jury would infer the defendant's possession of the drugs from the mere fact that he was in nonexclusive possession of the premises because the evidence established that either the defendant or another detainee identified by the defendant discarded the drugs." Id., 636 n.11.

In the present case, we are faced with two mutually exclusive accounts of the facts, neither of which require a charge regarding nonexclusive possession. We review these conflicting accounts seriatim.

The defendant presented evidence that he and his sister drove to Scott's residence, in a vehicle other than

the rental car that Lawrence allegedly had seen the defendant driving, in order to retrieve a compact disc. Once arriving at Scott's residence, the defendant borrowed Scott's key and proceeded to the rental car. It was at that point, before the defendant had ever reached the rental car, that he was arrested. This version of the facts, taken in the light most favorable to the defendant, supports a conclusion that the defendant was never in the vehicle in which the weapon was recovered. Thus, the defendant's claim should not be categorized as one of nonexclusive possession, but more appropriately as one of no possession at all.

The doctrine of nonexclusive possession provides that "where there exists access by two or more people to the [contraband] in question, there must be something more than the mere fact that [contraband was] found to support the inference that the [contraband was] in the possession or control of the defendant." *State* v. *Nesmith*, supra, 24 Conn. App. 161. Thus, the charge is appropriate in circumstances where the defendant has possession of the premises along with at least one other individual. The defendant's version of the facts, however, calls for neither a conclusion of joint nor exclusive access to the vehicle, but rather one of no access. The nonexclusive possession doctrine is typically implicated where the defendant admits that he had access to the premises, but denies that he had possession of the illegal item. See, e.g., *State* v. *Delossantos*, supra, 211 Conn. 262 (defendant was sole occupant of vehicle that contained cocaine hidden in rear of car, but denied knowledge of its presence); *State* v. *Alfonso*, supra, 195 Conn. 634 (defendant present in apartment where marijuana found, but denied ownership). Under the defendant's theory, however, he never had access to the premises. The nonexclusive posses-

sion doctrine, therefore, is inapplicable to the defendant's version of the facts.[9]

Even if we adopt the state's version of the facts as those most favorable to the defendant, as the defendant appears to argue, a nonexclusive possession charge was not required. The state presented evidence that Lawrence observed the defendant exit the vehicle, he peered through the car window, and he saw a weapon located on the driver's seat. In doing so, the state conceded that the defendant was not in physical possession of the firearm at the time of his arrest and acknowledged that, in order to establish possession of the firearm for a conviction under § 53a-217 by constructive possession, it was required to prove beyond a reasonable doubt that the defendant had exercised intentional dominion and control over the firearm and that he had knowledge of its character. See General Statutes § 53a-3 (2);[10] *State* v. *Hill*, supra, 201 Conn. 516 (concluding with respect to constructive possession that "control must be exercised intentionally and with knowledge of the character of the controlled object").

---

[9] Any rejoinder claiming that the defendant's version of the evidence demonstrates that he, through possession of the key to the rental car, had nonexclusive possession of the vehicle, is unavailing. The fact that the key was found on the defendant's person is entirely consistent with his theory of defense, which claims that he obtained the key from Scott in order to retrieve a compact disc from the vehicle. The defendant's contention, therefore, was that he did not have possession of the vehicle, nonexclusive or otherwise, at any point in time. Thus, an instruction regarding nonexclusive possession is not supported by the defendant's own evidence.

An instruction on the defendant's theory of defense is required only when "the evidence indicates the availability of that defense . . . ." *State* v. *Fuller*, 199 Conn. 273, 278, 506 A.2d 556 (1986). Contrary to the approach promulgated by the dissent, this court is not required to encumber the burden of contriving a variety of possible scenarios under which the defendant may then be entitled to an instruction regarding nonexclusive possession when the parties themselves presented no such situation.

[10] General Statutes § 53a-3 (2) provides that " '[p]ossess' means to have physical possession or otherwise to exercise dominion or control over tangible property . . . ."

If the defendant had driven the vehicle and the weapon was located on the driver's seat, as alleged by the state, then either the defendant was sitting on the weapon while driving or he placed the weapon on the driver's seat as he exited the vehicle. Either act demonstrates that the defendant had dominion and control over the weapon with knowledge of its character, thereby establishing possession. See General Statutes § 53a-3 (2). This court previously has explained that "[t]he essence of exercising control is not the manifestation of an act of control but instead it is the act of being in a position of control coupled with the requisite mental intent. In our criminal statutes involving possession, this control must be exercised intentionally and with knowledge of the character of the controlled object." *State* v. *Hill,* supra, 201 Conn. 516.[11] Thus, if believed, the state's evidence supports a conclusion that the defendant exhibited the requisite control and knowledge of the weapon necessary to establish possession.

The defendant contends that the state's evidence, coupled with the fact that Scott rented the vehicle and lived nearby, warranted a nonexclusive possession charge. He relies on *State* v. *Delossantos,* supra, 211 Conn. 258, for support of this proposition. In *Delossantos,* the defendant, who was the sole occupant of a borrowed vehicle, was pulled over by the police for traveling in excess of the posted speed limit. Id., 261. As a result of the stop and subsequent search of the

---

[11] See also *United States* v. *McKissick,* supra, 204 F.3d 1291 ("In cases involving joint occupancy of a place where contraband is found, mere control or dominion over the place in which the contraband is found is not enough to establish constructive possession. . . . In such cases, the government is required to present direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband. . . . The government must present some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the . . . contraband." [Citations omitted; internal quotation marks omitted.]).

vehicle, a bag containing cocaine was discovered hidden underneath a leather cover in the hatchback area of the vehicle. Id., 262. The defendant was charged with possession of cocaine with intent to sell. Id., 260. He testified at trial that he was unaware of the presence of cocaine in the vehicle. Id., 262. The jury found the defendant guilty and he appealed, claiming that the court erred with respect to its jury instructions on constructive possession. Id., 276. This court concluded that the trial court properly instructed the jury that " '[i]f the defendant was not in exclusive possession of the car where the narcotics were found at the time he was apprehended, it may not be inferred that the defendant knew of the presence of the narcotics and had control over them unless there are other incriminating statements, evidence or circumstances tending to buttress such an inference.' " Id., 277. Thus, the jury was not permitted to infer, without some evidence, that the defendant knew that cocaine was *hidden* in the rear of the car. The defendant's attempt to liken the present case to the situation in *Delossantos* is misplaced.

Unlike *Delossantos*, the item in question in the present case was not secreted, but rather was in plain view.[12] Under the state's version of the facts, the defendant either sat on the weapon or placed it on the driver's seat as he exited the vehicle. Based on the evidence, *no one else* had access to the vehicle between the time that Lawrence had witnessed the defendant driving, and the officer's discovery of the firearm.[13] "The evidence

---

[12] It should be noted that there was no dispute that the weapon was located on the driver's seat of the vehicle.

[13] We recognize that the car was rented to Scott and, therefore, at least one other individual had access to the vehicle at some point. The issue presented in this case, however, is not whether any other individual had access to the vehicle at *any point in time*, but rather, whether any other individual had access to the vehicle during the relevant time frame. Under the circumstances of this case, that time frame began when Lawrence witnessed the driver exit the vehicle and the weapon could be seen resting on the driver's seat. Thus, the fact that Scott was the legal renter of the vehicle is of no consequence to our analysis.

thus established possession of the [weapon] without requiring that the jury draw an inference based solely on the defendant's presence [in the vehicle]." *State* v. *Nesmith*, supra, 220 Conn. 634. Moreover, it would have been improper under these circumstances for the court to have instructed the jury on nonexclusive possession because the evidence would not have supported a finding that there was joint or simultaneous access to a weapon that the defendant either sat upon or held. See *State* v. *Diggs*, 219 Conn. 295, 299, 592 A.2d 949 (1991) ("[t]he court . . . has a duty not to submit to the jury, in its charge, any issue upon which the evidence would not reasonably support a finding"). Accordingly, there was no need for a nonexclusive possession charge.

The cumulative evidence offered in this case reasonably could support two mutually exclusive versions of what transpired prior to the defendant's arrest. Either the defendant was never in the vehicle, or he was in it and, because of the weapon's location on the driver's seat, was in sole possession of the weapon. The jury, as fact finder, was entitled to accept the version of the facts that it found credible.[14] Neither version, however,

Similarly, Dinatale's testimony that Scott had reported the vehicle stolen and then claimed that he had loaned it to a friend is irrelevant. The dissent suggests that this provides evidence to support the claim that others had possession of the vehicle. The dissent, however, fails to mention that the reported theft of the vehicle occurred the day before the alleged incident and, therefore, prior to the relevant time frame.

[14] It is also worth noting that under the charge given by the trial court, the jury could not have convicted the defendant on the basis of his factual scenario. It is a fundamental principle that "jurors are presumed to follow the instructions given by the judge." (Internal quotation marks omitted.) *State* v. *Smith*, 212 Conn. 593, 599, 563 A.2d 671 (1989); *State* v. *Williams*, 202 Conn. 349, 364, 521 A.2d 150 (1987); *State* v. *Barber*, 173 Conn. 153, 156, 376 A.2d 1108 (1977). During its charge, the trial court explained that "[p]ossession means intentional dominion and control over the firearm accompanied by knowledge of its character. Mere presence in the vicinity of the firearm, however, is not enough to establish possession." Presuming that the jury followed these instructions, it could not have found the defendant guilty based on mere possession of the key within close proximity to the vehicle. Consequently, the jury necessarily convicted the defendant

evidences the defendant's nonexclusive possession of the weapon. "[A] defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . ." (Internal quotation marks omitted.) *State* v. *Havican*, supra, 213 Conn. 597. We conclude that no such foundation was established and, therefore, the trial court properly denied the defendant's request to charge the jury on nonexclusive possession.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion SULLIVAN, C. J., and PALMER and ZARELLA, Js., concurred.

KATZ, J., dissenting. In this certified appeal, the state claims that the Appellate Court improperly determined that the trial court improperly had refused the defendant's requested jury instruction[1] regarding the doctrine of nonexclusive possession. It further claims that the

---

under the state's version of the facts, which did not require an instruction on nonexclusive possession.

[1] Specifically, the defendant requested that the trial court instruct the jury that "[w]here the defendant is not [in] exclusive possession of the [vehicle wherein] the firearm was found, you may not infer that he knew of its presence and that he had control of it, unless he made some incriminating statement, or unless there are [some] other circumstances [that] tend to support such an inference." The trial court denied that request and indicated that "what I am going to charge [the jury] . . . is that possession means intentional dominion and control over the firearm accompanied by knowledge of its character. Mere presence in the vicinity of the firearm, however, is not enough to establish possession. . . . [I]f that's what your claim is, that will be covered in the charge that I plan on giving. . . . I am going to charge [that] mere presence in the vicinity of a firearm, however, is not enough to establish possession. So to that end I am going to deny the request, your specific request to charge under the exclusive possession section because I think it is adequately covered in the charge that I am going to give under the elements of the crime." *State* v. *Williams*, 59 Conn. App. 771, 779–80 n.3, 758 A.2d 400 (2000).

trial court's failure to provide the jury with the requested instruction, if improper, constituted harmless error. The majority agrees with the state that the trial court's decision not to give the requested instruction was proper. I disagree, and therefore respectfully dissent.

I

Because the defendant was not in physical possession of the firearm at the time of his arrest, the state acknowledges, as it must, that, in order to establish possession of the firearm for a conviction under General Statutes (Rev. to 1999) § 53a-217 by constructive possession, it was required to prove beyond a reasonable doubt that the defendant had exercised intentional dominion and control over the firearm and that he had knowledge of its character. See General Statutes § 53a-3 (2);[2] *State* v. *Hill*, 201 Conn. 505, 516, 523 A.2d 1252 (1986) (concluding with respect to constructive possession that "control must be exercised intentionally and with knowledge of the character of the controlled object").[3] Although the majority recognizes that a criminal defendant is

---

[2] General Statutes § 53a-3 (2) provides that " '[p]ossess' means to have physical possession or otherwise to exercise dominion or control over tangible property . . . ."

[3] As the majority opinion recites, quoting *State* v. *Delossantos*, 211 Conn. 258, 277, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989), " '[w]here the defendant is not in exclusive possession of the premises where the [illegal item is] found, it may not be inferred that [the defendant] knew of the presence of the [illegal item] and had control of [it], unless there are other incriminating statements or circumstances tending to buttress such an inference. *Evans* v. *United States*, 257 F.2d 121, 128 (9th Cir.), cert. denied, 358 U.S. 866, 79 S. Ct. 98, 3 L. Ed. 2d 99, reh. denied, 358 U.S. 901, 79 S. Ct. 221, 3 L. Ed. 2d 150 (1958) . . . .' " See *State* v. *Berger*, 249 Conn. 218, 225, 733 A.2d 156 (1999); *State* v. *Alfonso*, 195 Conn. 624, 633, 490 A.2d 75 (1985). The doctrine of nonexclusive possession "was designed to prevent a jury from inferring a defendant's possession of [an illegal item] solely from the defendant's nonexclusive possession of the premises where the [illegal item was] found." *State* v. *Nesmith*, 220 Conn. 628, 636 n.11, 600 A.2d 780 (1991).

entitled to a jury instruction on a defense if there is any evidence presented at trial implicating that defense, in my opinion, it fails to adhere to that principle. Although the majority recognizes that it must view the evidence in the light most favorable to the defendant, it examines that evidence in a light that would support an acquittal, rather than simply in a manner that would gauge whether the defendant was entitled to a jury instruction on the doctrine of nonexclusive possession.

"As a general rule, a defendant is entitled to have instructions on a defense for which there is evidence produced at trial to justify the instruction, no matter how weak or incredible the claim." *State* v. *Varszegi*, 236 Conn. 266, 282, 673 A.2d 90 (1996); see *State* v. *Havican*, 213 Conn. 593, 597, 569 A.2d 1089 (1990) ("[i]f the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction" [internal quotation marks omitted]). Specifically, in deciding whether the trial court improperly failed to provide the jury instruction on nonexclusive possession of the premises, as requested by the defendant, "we must adopt the version of the facts most favorable to the defendant which the evidence would reasonably support." (Internal quotation marks omitted.) *State* v. *Henning*, 220 Conn. 417, 428, 599 A.2d 1065 (1991); see also *State* v. *Lewis*, 245 Conn. 779, 810, 717 A.2d 1140 (1998); *State* v. *Edwards*, 234 Conn. 381, 388, 661 A.2d 1037 (1995).

The state claims that "the evidence presented by the defendant did not permit a finding that [he] and Kirk Scott [the lessee of the vehicle] jointly had or previously had access to the car [and the firearm, but, rather] . . . the defendant's theory of the case was that, although he briefly possessed the key to [the] car, he could not have placed the gun on the front seat because Scott

had sole access to the vehicle." On the basis of this view of the evidence, the state contends, and the majority agrees, that the Appellate Court's conclusion in this case conflicts with the Appellate Court's decision in *State* v. *Nesmith*, 24 Conn. App. 158, 586 A.2d 628, aff'd, 220 Conn. 628, 600 A.2d 780 (1991) (affirming conviction for possession of narcotics where trial court refused to charge jury on nonexclusive possession), and this court's affirmance thereof. I disagree.

At trial in *Nesmith*,[4] the defendant argued that another detainee in the apartment in which the defendant had been arrested had dropped the narcotics at issue therein and he requested a jury charge on the doctrine of nonexclusive possession, which the trial court refused to provide. Id. In affirming the judgment of conviction, the Appellate Court reasoned that "[t]he common factor in cases that have applied [the doctrine of nonexclusive possession] is the fact that the narcotic substances were accessible to others and were found in areas that were also occupied by others." Id., 161. The Appellate Court concluded that, because the defendant had been charged with possession of the narcotics found in the back room of the apartment, which he alone had occupied, the evidence did not implicate sufficiently the doctrine of nonexclusive possession to warrant a jury instruction thereon. Id., 161–62.

This court affirmed the Appellate Court, concluding that the evidence presented by the defendant "established possession of the narcotics without requiring that the jury draw an inference based solely on the defendant's presence on the premises." *State* v. *Nesmith*, 220 Conn. 628, 634, 600 A.2d 780 (1991). "[T]he conflicting stories [presented by] the defendant and the state's witnesses both identified a specific person in possession of the drugs: the defendant, [whom the

---

[4] The majority opinion ably recounts the relevant facts in *Nesmith*.

police officer] observed discarding an object later retrieved and identified as narcotics, or another detainee, who, according to the defendant, [had discarded] several glassine envelopes on the floor next to the defendant." Id., 636. In *Nesmith*, "there was no risk that the jury would infer the defendant's possession of the drugs from the mere fact that he was in nonexclusive possession of the premises because the evidence established that either the defendant or another detainee identified by the defendant [had] discarded the drugs." Id., 636 n.11. Thus, this court concluded that the defendant had not been entitled to a jury instruction on nonexclusive possession. Id., 634.

In the present case, the defendant presented evidence at trial that he had received the key to the car from Scott, but that he had not yet entered the vehicle at the time of his arrest. Tammy Dinatale, a representative from National Car Rental (National), testified that National owned the vehicle, and that during the time that the vehicle had been leased to Scott, he had notified National that the vehicle had been stolen. Dinatale testified further that Scott had called back one and one-half hours later to say that the car had not been stolen, but that he simply had loaned it to a friend. Thus, the evidence presented to the jury established that, not only Scott, but potentially others, had access to the vehicle wherein the firearm was found. During the closing argument, defense counsel argued to the jury that "it could have been somebody else's gun [someone other than] Kirk Scott, maybe a friend of his. . . . Who's to say how many people were in and out of [the] car?"

In *Nesmith*, an instruction on nonexclusive possession was not warranted because the evidence presented to the jury established that it was either the defendant who had possessed the narcotics or another identified detainee in the immediate vicinity. There was no danger that the jury would have inferred possession of the

contraband based solely on the fact that the defendant, along with others, had occupied the vacant apartment wherein the officers had discovered the contraband. *State* v. *Nesmith*, supra, 220 Conn. 635. In this case, the evidence showed either that: (1) the defendant had exclusive possession of the car immediately before his arrest, which would have permitted the jury to infer that the defendant constructively possessed the firearm therein; see, e.g., *United States* v. *Finley*, 245 F.3d 199, 203 (2d Cir. 2001) ("[d]ominion, control, and knowledge may be inferred [from] a defendant's exclusive possession of the premises" [internal quotation marks omitted]); or (2) the defendant, through possession of the key to the vehicle rented by Scott, who at one point had reported it stolen, had nonexclusive possession of the vehicle, which would have precluded an inference of possession of the firearm in the absence of other evidence linking the defendant to the weapon to support such an inference. See *State* v. *Nesmith*, supra, 220 Conn. 633; *State* v. *Delossantos*, 211 Conn. 258, 277, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989).

It bears emphasizing that the issue in this case is not whether there was sufficient evidence to support a conclusion that the state proved beyond a reasonable doubt the required elements necessary for a conviction. As the majority noted in its opinion, the "evidence supports a conclusion that the defendant exhibited the requisite control and knowledge of the weapon to establish possession."[5] Rather, the issue is whether there was any evidence presented at trial, "no matter how weak or incredible," that would have justified the

---

[5] Indeed, a sufficiency of the evidence claim, contrary to a claim made by the defendant in this case concerning a failure to instruct as requested, requires this court to review the evidence presented at trial "in the light most favorable to sustaining the verdict." (Internal quotation marks omitted.) *State* v. *Wilcox*, 254 Conn. 441, 463, 758 A.2d 824 (2000).

requested jury instruction. *State* v. *Varszegi*, supra, 236 Conn. 282. In my opinion, because the majority loses sight of the fact that the evidence must be viewed in the light most favorable to the defendant that would support a requested jury instruction, it concludes that the defendant's possession of the key to the vehicle is irrelevant, as it was "entirely consistent with his theory of defense . . . ." See footnote 9 of the majority opinion.

Additionally, I disagree with the majority's analysis concerning the issue of the defendant's access to the vehicle. The majority asserts that "[t]he nonexclusive possession doctrine is typically implicated where the defendant admits that he had access to the premises" and it maintains that "[u]nder the defendant's theory [of the case] . . . he never had access to the premises." In this regard, the majority equates the defendant's ability to access the vehicle through possession of the key with *actually having accessed* the vehicle prior to his arrest. Although I agree that the defendant argued that he had not yet accessed the vehicle, the question whether he actually had done so, to me, is not dispositive of whether he is entitled to a jury charge on nonexclusive possession. This is particularly true where, as here, the state concedes that it prosecuted the defendant on a theory of constructive possession of the firearm and the trial court charged the jury accordingly.

In this case, possession of the key to the vehicle linked the defendant to the firearm contained therein. See *State* v. *Graham*, 186 Conn. 437, 445, 441 A.2d 857 (1982); cf. *State* v. *Chisolm*, 165 Conn. 83, 85, 328 A.2d 677 (1973) (insufficient evidence for conviction of possession of narcotics where "the only evidence of the defendant's culpability was that he had a key which unlocked a padlock to a bin in the cellar of a multiple dwelling which he owned but in which he did not live and the additional fact that narcotics were found in the

bin"). The defendant's ability to access and exercise control over the firearm through possession of the key to the unoccupied vehicle was but one factor comprising constructive possession. See *State* v. *Hill*, supra, 201 Conn. 516. "The essence of exercising control is not the manifestation of an act of control but instead it is the act of *being in a position of control* coupled with the requisite mental intent." (Emphasis added.) Id. (refusing to construe phrase "to exercise dominion or control" as referring only to situation where individual *has exercised* control). Indeed, as the majority aptly recognizes, a jury instruction on nonexclusive possession focuses the jury's attention on the other aspects of constructive possession—knowledge and intent to exercise control. Therefore, because the defendant, by possessing the key to the vehicle, had the ability to access and control the firearm, I would conclude that he was entitled to the requested instruction on nonexclusive possession.

The state also contends that in order for the doctrine to apply, there must be evidence that the defendant and others not only had access to the location where the firearm was found, but that they jointly occupied that location. In this case, however, at the time that the police discovered the firearm in the vehicle and arrested the defendant some distance from the scene, *no one* occupied the vehicle. As noted previously, the state concedes that it prosecuted the defendant based solely on his constructive possession of the firearm because, although the state alleged that the officer had witnessed the defendant driving the vehicle, the officer never actually saw the defendant with the firearm. In essence, the state's theory at trial was that the defendant had been in exclusive possession of the vehicle immediately preceding his arrest. The state contends that, because no one else had access to the vehicle between the time that the officer allegedly had witnessed the defendant

driving, and the officer's discovery of the firearm, the defendant constructively possessed the firearm. The defendant, however, claimed that he merely had possessed the key to the car and that others had access to the vehicle. Given these conflicting versions of the events, and particularly because no one occupied the vehicle at the time that the officer discovered the firearm and apprehended the defendant, I would conclude that it was for the jury to determine whether the defendant had been in exclusive or nonexclusive possession of the vehicle. See *State* v. *Delossantos*, supra, 211 Conn. 276–77 (characterizing trial court's instruction on nonexclusive possession as "correct" where defendant was sole occupant of vehicle owned by another individual and narcotics found hidden in hatchback of car; inference of possession of narcotics permissible if jury determined that defendant had exclusive possession of vehicle).

Because the defendant possessed the key to the unoccupied vehicle, which was owned by a corporation and leased to yet another individual, and he was apprehended some distance from the firearm, the jury should have been instructed to determine whether the defendant was in exclusive or nonexclusive possession of the vehicle.[6] In the absence of an instruction requiring it to consider the character of the defendant's possession of the vehicle, the jury potentially was permitted to draw improper inferences concerning the defendant's possession of the firearm. In this case, if the jury con-

---

[6] It is noteworthy that the evidence presented by both the state and the defendant established that Scott recently had rented the vehicle and that he lived in the vicinity. It seems to me that, particularly because the vehicle was unoccupied at the time that the firearm was discovered therein, the majority properly cannot determine, as a matter of law, that the defendant's possession was exclusive. That the officer testified to having observed the defendant driving the vehicle some moments before discovering the firearm does not convert what is otherwise a disputed factual determination into a legal conclusion eliminating the need for proper jury guidance.

cluded that, contrary to the state's theory, the defendant had *not* possessed the vehicle exclusively just prior to his arrest, the requested instruction would have ensured that any conviction under § 53a-217 was predicated upon more than "the defendant's nonexclusive possession of the premises where the [firearm was] found"; *State* v. *Nesmith*, supra, 220 Conn. 636 n.11; and would have required the jury to consider "other incriminating statements or circumstances tending to buttress [the] inference" of possession of the firearm. (Internal quotation marks omitted.) Id., 633. Accordingly, I would conclude that the Appellate Court properly determined that the defendant was entitled to an instruction on nonexclusive possession.

## II

Although the majority never reaches the second certified issue in this case; see footnote 8 of the majority opinion; I would conclude that omitting the requested instruction on nonexclusive possession alleviated the state's burden of proof on the element of possession and that the trial court's failure to so instruct the jury cannot withstand harmless error analysis.

"An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension." (Internal quotation marks omitted.) *State* v. *Lemoine*, 256 Conn. 193, 198–99, 770 A.2d 491 (2001); see *State* v. *Taylor*, 239 Conn. 481, 512, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997) (noting that jury instruction that dilutes state's burden of proof is unconstitutional); *State* v. *Wolff*, 237 Conn. 633, 669, 678 A.2d 1369 (1996) (due process requires for conviction proof beyond reasonable doubt of every fact necessary for crime charged). "The United States Supreme Court has recognized that most constitutional errors can be harmless. . . . *Neder* v. *United States*, 527 U.S. 1, 8, 119 S.

Ct. 1827, 144 L. Ed. 2d 35 (1999) . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Anderson*, 255 Conn. 425, 444, 773 A.2d 287 (2001). "If an impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt." *State* v. *Cavell*, 235 Conn. 711, 720, 670 A.2d 261 (1996).

"An alleged defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. " (Internal quotation marks omitted.) *State* v. *Spillane*, 255 Conn. 746, 757, 770 A.2d 898 (2001); see also *State* v. *Cerilli*, 222 Conn. 556, 584 n.16, 610 A.2d 1130 (1992) ("perceiv[ing] no functional difference" between harmless error standard requiring court to determine, on whole record, whether constitutional error harmless beyond reasonable doubt, and standard of whether there was no reasonable possibility that jury was misled). "In performing harmless error analysis, we keep in mind that [i]n determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Internal quotation marks omitted.) *State* v. *Spillane*, supra, 757; *State* v. *Anderson*, 227 Conn. 518, 532, 631 A.2d 1149 (1993) (charge considered from standpoint of its effect on jury in guiding it to proper verdict).

In this case, the trial court charged the jury that "[p]ossession is defined as intentional dominion and control over the firearm accompanied by knowledge of its character. Mere presence in the vicinity of the fire-

arm, however, is not enough to establish possession." The state contends that the overall charge, including the instructions that the state was required to prove the elements of the crime beyond a reasonable doubt and that the defendant was not required to prove his innocence, adequately informed the jury and properly guided it to a verdict. The state also claims that, because the defendant's theory of the case was that he had not entered the car and had no knowledge of the gun, the trial court's instruction defining possession as intentional and knowing dominion and control required the jury to find that the defendant knew of the presence and character of the firearm in order to convict him under § 53a-217. I disagree.

Although the trial court's jury charge was a correct statement of the law regarding constructive possession; see, e.g., State v. Hill, supra, 201 Conn. 515; State v. Kas, 171 Conn. 127, 130–31, 368 A.2d 196 (1976); I am not convinced that the failure to provide further guidance to the jury, as the defendant requested, with respect to the defendant's claimed nonexclusive possession of the vehicle and constructive possession of the firearm, was harmless beyond a reasonable doubt. The evidence at trial concerning the defendant's possession of the firearm was neither uncontested nor overwhelming. See Neder v. United States, supra, 527 U.S. 17 ("where a reviewing court concludes beyond a reasonable doubt that [an] omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless"). Indeed, because the defendant stipulated to the fact that he had been convicted of a felony in the past, possession of the firearm and its operability were the only disputed issues at trial.

It is important to remember that no one occupied the vehicle at the time that the gun was discovered

therein. Under the state's theory, the jury was required to infer the defendant's constructive possession of the firearm from his possession of the vehicle. A critical question for the jury to decide, therefore, was whether the defendant had been in exclusive possession of the vehicle immediately preceding his arrest, as the state had claimed, or whether he simply possessed the key and was not in exclusive possession. See *State* v. *Delossantos*, supra, 211 Conn. 277–78 (noting that " '[o]ne who owns or exercises dominion or control over a motor vehicle in which [contraband] is concealed may be deemed to possess the contraband' "; jury properly instructed that it may infer possession of contraband if defendant in exclusive possession of vehicle). If the jury determined that the defendant had not been in exclusive possession of the vehicle, then an inference that he had possessed the firearm would have been impermissible unless there were "other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) *State* v. *Berger*, 249 Conn. 218, 225, 733 A.2d 156 (1999); *State* v. *Alfonso*, 195 Conn. 624, 633, 490 A.2d 75 (1985).[7] The issue of whether the defendant had been in nonexclusive possession of the vehicle, and hence of the firearm, turned largely on the credibility of the witnesses. See *State* v. *Morant*, 242 Conn. 666, 682, 701 A.2d 1 (1997) (credibility of witnesses for jury to determine). The inferences that the jury properly could have drawn from its determination of that issue, however, are circumscribed by law. *State* v. *Berger*, supra, 225.

---

[7] If the "totality of the evidence" includes other incriminating statements or facts demonstrating that the defendant knew of the presence of the firearm and intentionally exercised dominion and control over it, and those additional statements or facts would "reasonably and logically support [an] inference, then the jury may be instructed that it may draw such a permissive inference." *State* v. *Gerardi*, 237 Conn. 348, 361, 677 A.2d 937 (1996). "[T]he jury must be instructed that it may infer facts only upon finding sufficient predicate . . . facts and circumstances that are rationally connected with the ultimate facts inferred." Id.

Although the evidence here suggested[8] that the defendant was attempting to retrieve a personal item from the vehicle, there was no other evidence concerning the location of that item to the firearm. See, e.g., *State v. Stiles*, 128 N.H. 81, 86, 512 A.2d 1084 (1986) (noting that evidence of personal possessions of defendant standing in close proximity to contraband may provide sufficiently close nexus between defendant and contraband to allow jury to infer possession). Virtually no other incriminating statements or circumstances were presented in this case that would have buttressed an inference that the defendant constructively possessed the firearm. The entire case hinged on the surmise that the defendant possessed the firearm by possessing the car, and the characterization of the defendant's possession of the vehicle, as exclusive or nonexclusive, was crucial with respect to the proper inferences that the jury could have drawn concerning possession of the firearm.

Without a proper instruction guiding the jury to make the proper inferences concerning possession of the firearm, separate from its determination of whether the defendant had possessed the vehicle exclusively or nonexclusively, I cannot conclude, beyond a reasonable doubt, that the jury was *precluded* from drawing an improper inference concerning the defendant's possession of the firearm. That is, in the absence of an instruction directing the jury that, if it determined that the defendant was not in exclusive possession of the vehicle, it could not draw an inference that the defendant possessed the firearm unless there were other statements or circumstances supporting the conclusion that he possessed the gun, I cannot conclude, beyond a reasonable doubt, that the jury was not misled. The

---

[8] I emphasize that the court must view the evidence in the light most favorable to the defendant. See *State v. Lewis*, supra, 245 Conn. 810; *State v. Edwards*, supra, 234 Conn. 388.

trial court's instruction in this case was not sufficient to guide the jury in determining the issue of possession of the firearm and, accordingly, the failure to instruct the jury as the defendant requested was not harmless. *State* v. *Anderson*, supra, 255 Conn. 444 (harmless error doctrine "essential to preserve the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial" [internal quotation marks omitted]).

Accordingly, I dissent.