STATE OF CONNECTICUT *v.* TYQUAN
AVANT BRODIA
(AC 31162)

Bishop, Robinson and Borden, Js.

Argued January 31—officially released June 14, 2011

*Annacarina Jacob*, senior assistant public defender, with whom, on the brief, was *James B. Streeto*, assistant public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Michael Dearington*, state's attorney, and, on the brief, *Brian Leslie*, assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The defendant, Tyquan Avant Brodia, appeals from the judgment of conviction, rendered after

a jury trial, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b), possession of a controlled substance with intent to sell in violation of General Statutes § 21a-277 (b), and possession of a controlled substance with intent to sell within 1500 feet of a public housing project in violation of § 21a-278a (b). On appeal, the defendant claims that: (1) the trial court improperly denied his motion to suppress evidence seized as the result of a warrantless vehicle search; (2) the court failed to give a requested instruction regarding nonexclusive possession; (3) the court improperly failed to require the jury to reach a unanimous verdict; and (4) the evidence adduced at trial was insufficient to support his conviction. We disagree and, accordingly, affirm the judgment of the trial court.

The defendant was charged by way of a substitute information with the crimes previously set forth. The jury found him guilty of all of the charges, and the court rendered judgment accordingly and sentenced the defendant to a total effective term of seventeen years incarceration. This appeal followed.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On the afternoon of July 29, 2007, Luiz Casanova, a thirteen year veteran of the New Haven police department, was traveling to a community meeting at Farnam Court, a public housing project, in New Haven. Casanova had switched from driving a police vehicle to driving his own personal vehicle so that he could go directly home after the meeting, but was still dressed in full police uniform. As he approached Farnam Court, Casanova noticed a Ford Taurus obstructing the driveway entrance and a Dodge Intrepid parked alongside

facing his direction. Casanova stopped behind the Taurus and, as he waited for it to move, watched as the defendant exited the Intrepid and walked over toward the Taurus. The defendant and the driver of the Taurus, Louis Perry, then engaged in what Casanova believed to be a hand-to-hand drug transaction, as he witnessed the two individuals exchange an item for money.

The defendant then turned in the direction of Casanova, pointed to his hand and asked if he was "all set or did [he] want one." Casanova suspected the items in the defendant's hand were drugs and he nodded his head as if to indicate that he too wanted to make a purchase. The defendant began walking toward Casanova, who then exited his vehicle. When the defendant realized that Casanova was dressed in a police uniform, he immediately ran back toward the Taurus and tried to climb into the driver's side window. Casanova ran after him and, seeing that the defendant was trying to swallow the items he had in his hand, Casanova grabbed the defendant's right arm and the items fell to the ground. Casanova described the items on the ground as "small, glassine ziplock baggies, brown tinted . . . [with] a white rocky substance inside." From his training and experience, Casanova believed that the substance was crack cocaine.

At that point, Casanova put the defendant in handcuffs and, when additional officers arrived, secured him in a police vehicle. Casanova then walked over to the Intrepid, looked inside and saw a plastic bag between the console and the driver's seat, which contained many other smaller bags. Casanova opened the door to the vehicle and pulled out the bag, which contained many smaller bags that contained what was later determined to be marijuana and crack cocaine.

Two additional police officers, namely, Officer Richard Cotto and Officer Diego Quintero, subsequently

arrived at the scene. Cotto removed Perry from the Taurus and, in the process, saw small tinted baggies containing a white rocky substance on the driver's seat. The baggies matched those that had fallen to the ground when Casanova restrained the defendant.

Following his arrest, the defendant filed a motion to suppress the contraband recovered from the Intrepid, contending that the search and seizure were conducted without a warrant and absent other legal justification. The court thereafter issued an oral memorandum of decision denying the defendant's motion. Additional facts will be set forth as necessary.

I

The defendant first claims that the state conducted an illegal warrantless vehicle search and, therefore, the seizure of the contraband in the rented Intrepid violated his federal and state constitutional rights. The following additional facts are relevant to his claim.

In his motion to suppress, the defendant claimed that the search of the Intrepid and the subsequent seizure of the contraband were illegal in that the search was conducted without a warrant and the police did not have probable cause to justify a warrantless search of the vehicle. The court held an evidentiary hearing on the defendant's motion, during which Casanova testified that, on the basis of his extensive experience and training regarding illicit narcotics sales, he witnessed what he suspected to be a hand-to-hand drug transaction between the defendant and Perry. Casanova also testified that, after he exited his vehicle, the defendant ran toward the Taurus and tried to swallow the items that were in his hand. Casanova then explained that he restrained the defendant and the items, which he described as individually wrapped packets of crack cocaine, fell to the ground. In addition, Casanova testified that, after the defendant had been secured, he went

to the Intrepid and observed a large bag with a variety of narcotics in it. Casanova stated that the bag was found between the driver's seat and the console, and that he clearly could see the bag without any manipulation of the seat.

In its oral memorandum of decision, the court first noted that the defendant had a reasonable expectation of privacy in the rented vehicle and that the warrantless search of the vehicle was per se unreasonable. The court concluded, however, that several exceptions to the warrant requirement applied in this case, namely, the plain view doctrine, probable cause to believe the automobile contained evidence pertaining to the crime, and a search incident to a lawful arrest. In support of this determination, the court found credible Casanova's testimony that he witnessed the defendant exit the Intrepid and engage in what he believed to be a drug transaction, that he found drugs on the ground near where the defendant was apprehended and that the plastic bag found in the Intrepid containing marijuana and crack cocaine was in plain view.

On appeal, the defendant claims that the court improperly denied his motion to suppress. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . We undertake a more probing factual review when a constitutional question hangs in the balance." (Citation omitted; internal quotation marks omitted.) *State* v. *Clark*, 297 Conn. 1, 7, 997 A.2d 461 (2010).

The defendant first contends that the court's findings were clearly erroneous and unsupported by the record with regard to its determination that the plastic bag containing the contraband was in plain view. Specifically, he claims that the court erroneously found that the seizure of the contraband was reasonable under the plain view doctrine because Casanova did not testify that the actual contents of the bag were visible in plain view. We are not persuaded.

"In *Coolidge* v. *New Hampshire*, 403 U.S. 443, 464–73, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), the United States Supreme Court articulated what has become known as the plain view exception to the warrant requirement. The warrantless seizure of contraband that is in plain view is reasonable under the fourth amendment if two requirements are met: (1) the initial intrusion that enabled the police to view the items seized must have been lawful; and (2) the police must have had probable cause to believe that these items were contraband or stolen goods." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 520, 903 A.2d 169 (2006).

"The plain view doctrine is based upon the premise that the police need not ignore incriminating evidence in plain view while they are operating within the parameters of a valid search warrant or are otherwise entitled to be in a position to view the items seized." (Internal quotation marks omitted.) *State* v. *Thomas*, 98 Conn. App. 542, 552, 909 A.2d 969 (2006), cert. denied, 281 Conn. 910, 916 A.2d 53 (2007). "[I]f contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no search within the meaning of the [f]ourth [a]mendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 279 Conn. 520–21.

The defendant does not challenge the fact that Casanova lawfully was entitled to his vantage point at the moment he first observed the plastic bag in the Intrepid; the thrust of his claim is that Casanova failed to testify specifically that the contents of the bag were visible from the outside of the Intrepid and, consequently, there was no testimony to support the court's finding that it was apparent to Casanova that the plastic bag actually contained contraband. "Under the plain view doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. . . . The police meet the immediately apparent requirement if, [up]on discovery, they have probable cause to associate the property in plain view with criminal activity without further investigation." (Citation omitted; internal quotation marks omitted.) Id., 521.

As set forth previously, Casanova specifically testified at the evidentiary hearing on the motion to suppress that he walked over to the Intrepid and "observed a large bag with a variety of narcotics in it." When asked whether he clearly could see the bag without any manipulation of the seat, he answered in the affirmative. Moreover, even if Casanova could not determine with absolute certainty that the bag contained contraband, the underlying facts "were sufficient to establish probable cause to associate the property in plain view with criminal activity without further investigation." (Internal quotation marks omitted.) Id., 522. Accordingly, we conclude that Casanova lawfully seized the contraband under the plain view doctrine and that the trial court properly denied the defendant's motion to suppress.[1]

[1] This conclusion renders it unnecessary to consider the defendant's challenges to the court's conclusions that the search and seizure also was valid under the automobile and the search incident to arrest exceptions to the warrant requirement.

## II

We turn next to the defendant's claim that the court failed to give a requested instruction regarding the doctrine of nonexclusive possession. The following additional facts are relevant to this claim.

At trial, the defendant presented evidence that the Intrepid had not been rented by him, and instead had been rented by his friend, Laquita Lennon. Lennon testified that she had rented the vehicle, but had let the defendant use it because something was wrong with his own vehicle. She also stated that when she gave the defendant the vehicle there were no plastic bags located between the console and the driver's seat.

In his written request to charge, the defendant requested an instruction on the doctrine of nonexclusive possession. Specifically, the defendant requested the court to instruct the jury that if it had reasonable doubt as to whether he alone had possession of the Intrepid, it was "precluded from inferring the element of possession (to the defendant) from the mere fact that the defendant, along with others, occupied or had access to the premises wherein the contraband was found." Thereafter, the court heard argument on the defendant's request to charge. Following the defendant's concession that he was the only person seen in the vehicle at or around the time of his arrest and the seizure of the contraband, the court denied the request.

The defendant contends that the court improperly refused to instruct the jury on the doctrine of nonexclusive possession. The state counters that the court properly refused to instruct on nonexclusive possession because the defendant failed to adduce a sufficient evidentiary foundation to warrant such an instruction. We agree with the state and conclude that the court properly denied the defendant's request to charge the jury on this issue.[2]

---

[2] Although a copy of the request to charge is not part of the trial court file, the record reflects indisputably that the court was aware of the request,

"Our Supreme Court has defined the doctrine of non-exclusive possession as follows: 'Where the defendant is not in exclusive possession of the premises where the [illegal item is] found, it may not be inferred that [the defendant] knew of the presence of the [illegal item] and had control of [it], unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . The doctrine of nonexclusive possession was designed to prevent a jury from inferring a defendant's possession of [an illegal item] solely from the defendant's nonexclusive possession of the premises where the [illegal item was] found. . . . When the doctrine applies, an instruction focuses the jury's attention on the defendant's knowledge and intent to possess, precluding it from inferring possession from the mere fact that the defendant, along with others, occupied or had access to the premises wherein the contraband was found.' . . . *State* v. *Williams*, 258 Conn. 1, 7–8, 778 A.2d 186 (2001)." *State* v. *Boyd*, 115 Conn. App. 556, 563–64, 973 A.2d 138, cert. denied, 293 Conn. 912, 978 A.2d 1110 (2009).

"As a general rule, a defendant is entitled to have instructions on a defense for which there is evidence produced at trial to justify the instruction, no matter how weak or incredible the claim." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 258 Conn. 8. "Although a requested jury instruction may be accurate as an abstract principle of law, it must be applicable to the facts of the case at hand." *State* v. *Collazo*, 113 Conn. App. 651, 668, 967 A.2d 597, cert. denied, 293

heard argument on the proposed charge and rejected it. Moreover, the state does not contend, nor does the record reflect, that the request to charge was not filed in accordance with our rules of practice. Compare *State* v. *Jefferson*, 114 Conn App. 566, 574–75, 970 A.2d 797 (document not filed in compliance with Practice Book § 42-17 cannot be considered written request to charge and does not properly preserve instructional error claim), cert. denied, 292 Conn. 921, 974 A.2d 722 (2009). Accordingly, we conclude that the issue is preserved for appellate review. See Practice Book § 16-20.

Conn. 904, 976 A.2d 705 (2009). Furthermore, "[t]he court . . . has a duty not to submit to the jury, in its charge, any issue upon which the evidence would not reasonably support a finding." (Internal quotation marks omitted.) *State* v. *Heinemann*, 282 Conn. 281, 299, 920 A.2d 278 (2007).

In the present case, the defendant failed to proffer any evidence that reasonably would suggest that there was simultaneous access by others to the Intrepid while the contraband was in the vehicle. Moreover, Lennon testified that, at the time she gave the defendant the keys to the vehicle, there were no objects or plastic bags between the console and the driver's seat. In addition, Casanova testified that there was no one in the Intrepid when the defendant exited the vehicle and walked over to engage in the drug transaction with Perry. Under these circumstances, it would have been improper for the court to have instructed the jury on nonexclusive possession because the evidence reasonably would not have supported a finding that there was joint or simultaneous access to the contraband in the vehicle. See *State* v. *Williams*, supra, 258 Conn. 15; see also *State* v. *Collazo*, supra, 113 Conn. App. 669 (defendant not entitled to nonexclusive possession instruction where evidence demonstrated he was only person in vehicle at time of arrest).

### III

The defendant also claims that the court improperly failed to require the jury to agree unanimously on the factual basis for a guilty verdict on the possession with intent to sell charges. The defendant concedes on appeal that this claim was not preserved at trial but nevertheless seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3] Although

---

[3] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right;

we conclude that the record is adequate for review and the claim is of constitutional magnitude; see *State* v. *Griffin*, 97 Conn. App. 169, 182, 903 A.2d 253 ("[a] claim bearing on the defendant's right to a unanimous verdict implicates a fundamental constitutional right to a fair trial" [internal quotation marks omitted]), cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006); the defendant has failed to demonstrate that a constitutional violation exists.

In *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991), our Supreme Court set forth the applicable principles governing specific unanimity charges: "[W]e have not required a specific unanimity charge to be given in every case in which criminal liability may be premised on the violation of one of several alternative subsections of a statute. We have instead invoked a multipartite test to review a trial court's omission of such an instruction. We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. *If such an instruction has not been given, that ends the matter.* Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." (Emphasis added.)

The defendant contends that the court's instructions were inadequate because they did not instruct the jury that it had to agree unanimously on the factual basis for

(3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

finding the defendant guilty of possession with intent to sell. Specifically, he claims that, because the state offered two different theories upon which the defendant could have been found to have been in possession of controlled substances, namely, actual possession of the crack cocaine found on the ground near the Taurus and constructive possession of the large bag containing crack cocaine and marijuana found in the Intrepid, without an appropriate unanimity instruction, "[s]ome jurors could have concluded the evidence failed to support a finding of constructive possession of the narcotics found in the Intrepid, while other jurors could have concluded the evidence failed to support a finding that the defendant possessed with intent to sell the four bags found on the ground . . . ." We are not persuaded.

Our careful review of the court's entire charge reveals a complete absence of any language expressly sanctioning a nonunanimous verdict. "With respect to the first prong of *Famiglietti*, namely, whether the trial court's jury instructions have sanctioned a nonunanimous verdict, it is well established that the absence of language *expressly sanctioning* a nonunanimous verdict means that the defendant has not met the first part of the *Famiglietti* test. . . . Indeed, if the trial court did not sanction a nonunanimous verdict we need not address the other parts of the *Famiglietti* test." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Ceballos*, 266 Conn. 364, 419–20, 832 A.2d 14 (2003). Furthermore, the court instructed the jury as follows on the need for a unanimous verdict with respect to the possession with intent to sell narcotics counts: "If you find the state has proven beyond a reasonable doubt the defendant possessed with intent to sell a narcotic substance, cocaine freebase, and that it occurred in or on or within 1500 feet of the real housing project, you say so by your verdict. On the other hand, if you find that the state has not

proven unanimously beyond a reasonable doubt any of the elements you shall find the defendant not guilty."

## IV

Finally, the defendant raises a claim of evidential insufficiency. Specifically, he maintains that the evidence adduced by the state was insufficient to sustain his conviction for possession of marijuana and crack cocaine. We do not agree.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found

credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 542–43, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct 1798, 164 L. Ed. 2d 537 (2006).

In the present case, there is a reasonable view of the evidence that supports the jury's finding that the defendant was in possession of the crack cocaine and the marijuana. As set forth previously, the state presented evidence in the form of Casanova's testimony that the defendant engaged in what he believed to be a hand-to-hand drug transaction, where the defendant passed an item to Perry in exchange for money. The defendant inquired of Casanova whether he was "all set," then approached Casanova's vehicle and subsequently fled when he realized Casanova was dressed in a police uniform. Casanova then apprehended the defendant and grabbed his arm, forcing him to drop the items in his hand. The items fell to the ground and subsequent field tests indicated that the items the defendant had been carrying tested positive for cocaine in a free-base form. Accordingly, we conclude that there was sufficient evidence to support the finding that the defendant was in actual possession of crack cocaine.

The record also demonstrates that there was sufficient evidence from which the jury reasonably could find that the defendant was in constructive possession of the crack cocaine and marijuana found in the Intrepid. The jury heard the testimony of Lennon that, although she had rented the Intrepid, she let the defendant use it on the day he was arrested and the controlled

substances were found in the vehicle. Lennon also testi-fied that there was no plastic bag between the center console and the driver's seat when she lent it to the defendant. Furthermore, Casanova testified that the defendant was alone in the vehicle and, after the defen-dant was apprehended, he saw the large plastic bag containing crack cocaine and marijuana between the front seat and the console of the Intrepid. Finally, there was no testimony presented to the jury that anyone other than the defendant had been seen in the vehicle or had approached the vehicle during the events that led up to Casanova's noticing the controlled substances in plain view.

The judgment is affirmed.

In this opinion the other judges concurred.