******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* GRAHAM S.*
(AC 34613)

Beach, Robinson and Flynn, Js.**

*Argued December 2, 2013—officially released April 8, 2014*

(Appeal from Superior Court, judicial district of
Waterbury, O'Keefe, J.)

*Craig A. Sullivan*, assigned counsel, for the appellant (defendant).

*Matthew A. Weiner*, deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Karen Diebolt*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Graham S., appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), unlawful restraint in the first degree in violation of General Statutes § 53a-95, assault in the third degree in violation of General Statutes § 53a-61 (a) (1), strangulation in the second degree in violation of General Statutes § 53a-64bb, and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that the trial court erred (1) by permitting the victim to make reference to the defendant's prior incarceration, in contravention of its prior ruling on this matter and, additionally, by not sua sponte declaring a mistrial after this testimony was given; (2) in rendering a judgment of conviction of unlawful restraint in the first degree, assault in the third degree, and strangulation in the second degree, in contravention of § 53a-64bb (b), and in violation of the fifth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution; and (3) in improperly instructing the jury on the requirement of a unanimous verdict to convict of burglary in the first degree, strangulation in the second degree, and risk of injury to a child. We affirm in part and reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim had at one time been romantically involved with each other and had a daughter together. On March 18, 2011, the defendant accompanied the victim and their daughter to the victim's apartment. The defendant and his daughter played together outside on the apartment's porch while the victim retired to her bedroom where she eventually fell asleep. She next awoke to find the defendant in her bedroom, yelling at her and calling her names. The defendant's rant "made no sense." The victim asked him if he had been drinking. After initially denying it, the defendant admitted that he had been drinking. The victim asked the defendant to leave, which he did. The victim locked the door behind the defendant.

Approximately fifteen minutes after the defendant left the apartment, he began banging on the locked door. The victim asked the defendant to leave her and their daughter alone, telling him that they were going to sleep. Fifteen minutes later, the victim heard noises coming from the bathroom area. When she got up to investigate, she saw the defendant attempting to enter her apartment through her bathroom window. Fearing that she could not prevent the defendant from entering her apartment, the victim returned to her bedroom, where their daughter was sleeping, and locked the bedroom door.

The defendant gained entrance and remained in the apartment for thirty minutes. He became irate and, in a drunken tirade, yelled at the victim and demanded to see their daughter. Once the defendant had gained entrance, the victim told him to leave them alone, but she allowed him to sleep on her couch.

Eventually, the victim heard more banging coming from her daughter's bedroom, which was separated from her bedroom by a wall. While lying in bed with her daughter, she observed the defendant open her bedroom window from outside. The defendant attempted to enter the victim's bedroom through this window. The victim struggled to close and lock the window, but she soon realized that she would be overpowered by the defendant. At this point, the victim instructed her daughter to "call 911." Upon hearing this, the defendant backed out of the window, reentered his daughter's room and then broke through the victim's bedroom door. As soon as he broke through the bedroom door "he said he's not going back to jail." The defendant proceeded to choke the victim until she could no longer breathe; she eventually lost consciousness and fell to the floor.

The victim awoke to her daughter screaming "we have to take mommy to the hospital." The victim found blood on her hands, which had come from her mouth. The defendant became fearful that the victim would report what had happened to the police and demanded that she give him her telephone, which she refused to do. The victim reassured the defendant that she would not call the police; she asked him to leave them alone and told him that they we going back to sleep. The victim lay in bed with her daughter while the defendant continuously paced in and out of her bedroom throughout the night.

In the morning, the victim found the defendant asleep on her living room couch. The victim drove the defendant to his home in Meriden and then went directly to her father's home. The victim's father called the police. He then drove the victim to the hospital and then to the Watertown police station. The defendant was arrested thereafter.

Following a jury trial, the defendant was convicted of the crimes charged in the substitute long form information. The defendant was sentenced to twenty years of incarceration, suspended after nine years, and five years of probation for the conviction of burglary in the first degree; nine years of incarceration for the conviction of risk of injury to a child; five years of incarceration for the conviction of strangulation in the second degree; five years of incarceration for the conviction of unlawful restraint in the first degree; and one year of incarceration for the conviction of assault in the third degree, all to run concurrently, for a total effective sentence

of twenty years of incarceration, suspended after nine years, and five years of probation. This appeal followed.

I

The defendant first claims that the court abused its discretion by permitting a witness for the state to make reference to his prior incarceration, in contravention of the court's earlier ruling that had limited reference to the defendant's prior convictions and uncharged acts of prior misconduct. Specifically, he claims that the court should not have overruled his objection to the victims' testimony that after the defendant broke into her bedroom, he exclaimed that he was "not going back to jail" before proceeding to attack her. He further claims that the court should have, sua sponte, declared a mistrial after this testimony was offered. We disagree.

Prior to the commencement of trial, the defendant filed three motions seeking to prevent the state from introducing into evidence acts of prior criminal activity and uncharged misconduct on the part of the defendant. After listening to argument from counsel, the court held that the victim was precluded from "testify[ing] to other crimes committed against her that are uncharged." Applying a balancing test,[1] the court stated that "uncharged misconduct on the part of the defendant [is] not admissible because it's more prejudicial than probative." The court also held that the state could not make reference to the defendant's prior convictions for assault in the third degree and risk of injury to a child. Significantly, however, the court did say that the victim may "testify to what she saw or heard or did that day." The court also stated that "[i]f [the victim] blurts out inadmissible evidence after I've made a ruling, there will be a mistrial."

During the state's case-in-chief, the victim testified that the defendant attempted to break into her apartment through their daughter's locked bedroom window; that she struggled to keep him out; and that when she realized that she would not be able to do so, she instructed her daughter to call 911. The prosecutor and the victim then had the following exchange:

"[The Prosecutor]: And then what happened?

"[The Victim]: As soon as I said, call 911, he went back in through her window, out of her room, and that's when he pushed my door open. It was locked but he—

"[The Prosecutor]: And pushing it open, what happened to the door?

"[The Victim]: [It had] cracks in it.

"[The Prosecutor]: And did he get through that door?

"[The Victim]: Oh yeah.

"[The Prosecutor]: And was he saying anything at this time?

"[The Victim]: As soon as he got through that door, he said he's not going back to jail.

"[Defense Counsel]: Objection, Judge. Reference to—

"[The Court]: Overruled."

The defendant contends that the court abused its discretion by overruling his objection to the victim's testimony that immediately prior to the attack, the defendant stated to her that he was "not going back to jail." He argues that this statement should not have been allowed because its probative value was outweighed by the danger of unfair prejudice, and, alternatively, that the law of the case doctrine prohibited admission of this testimony.[2] The defendant further argues that the court should have declared a mistrial once the victim made the challenged statement. We reject the defendant's claims.

"It is well established that this court affords great deference to a trial court's evidentiary rulings. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *Douglas F.*, 145 Conn. App. 238, 246, 73 A.3d 915, cert. denied, 310 Conn. 955, 81 A.3d 1181 (2013). "We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Kerr*, 120 Conn. App. 203, 214, 991 A.2d 605, cert. denied, 296 Conn. 907, 992 A.2d 1136 (2010).

"When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the [impropriety] was harmful. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless [is] . . . whether the jury's verdict was substantially swayed by the error. *State* v. *Sawyer*, 279 Conn. 331, 357, 904 A.2d 101 (2006), overruled in part on other grounds by *State* v. *DeJesus*, 288 Conn. 418, 455 n. 23, 953 A.2d 45 (2008) (en banc). [A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict. . . . Id. [W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on mate-

rial points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Kerr*, supra, 120 Conn. App. 214.

We conclude that it was not improper for the court to overrule the defendant's objection to the victim's testimony that the defendant said he was "not going back to jail." This statement was consistent with the court's pretrial ruling that the victim may "testify to what she saw or heard or did that day." The victim's testimony was limited to reciting only what the defendant said to her immediately prior to the strangulation. The defendant's statement was relevant for the permissible purpose of showing the defendant's motive in strangling the victim, namely, to incapacitate her so that she could not call for emergency and police assistance.[3] Therefore, the court did not abuse its discretion in admitting this evidence by overruling the defendant's objection. For the same reasons, the defendant has also not shown that the court abused its wide discretion in failing to declare a mistrial on its own motion.

## II

The defendant next claims that the trial court erred in rendering a judgment of conviction of unlawful restraint in the first degree, assault in the third degree, and strangulation in the second degree, in contravention of § 53a-64bb (b), and in violation of the fifth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution. The state concedes the defendant's claim of error under § 53a-64bb (b). We agree that, pursuant to § 53a-64bb (b), it was error for the court to render a judgment of conviction of all three of these crimes.

## A

We adhere to Justice Brandeis' principle of constitutional avoidance. "[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter." *Ashwander* v. *Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring); see also *State* v. *McCahill*, 261 Conn. 492, 502, 811 A.2d 667 (2002). Because we are able to resolve the matter before us on statutory grounds, we do not address the defendant's federal or state constitutional claims.

The claim presented is one of statutory construction, over which this court applies plenary review. *State* v. *Adams*, 308 Conn. 263, 269, 63 A.3d 934 (2013). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine,

in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." (Internal quotation marks omitted.) Id., 270.

Our analysis begins with the statutory text. General Statutes § 53a-64bb (b) provides in pertinent part: "No person shall be found guilty of strangulation in the second degree and unlawful restraint or assault upon the same incident, but such person may be charged and prosecuted for all three offenses upon the same information." We interpret this statute to mean three things. First, a person may not be convicted of strangulation in the second degree *and* unlawful restraint, upon the same incident. Second, a person may not be convicted of strangulation in the second degree *and* assault, upon the same incident. Third and finally, a person may not be convicted of strangulation in the second degree and *both* unlawful restraint *and* assault, upon the same incident. "In construction of statutes . . . courts are often compelled to construe *or* as meaning *and*, and again *and* as meaning *or*." (Emphasis in original; internal quotation marks omitted.) *United States* v. *Fisk*, 70 U.S. (3 Wall.) 445, 447, 18 L. Ed. 243 (1865).

In the present case, the jury found the defendant guilty of strangulation in the second degree, unlawful restraint in the first degree, and assault in the third degree; all three verdicts were based upon the same incident. The court accepted this verdict, rendered a judgment of conviction as to each charge, and sentenced the defendant accordingly. The state and the defendant are in agreement that, as a matter of law, this was error. Cf. *State* v. *Miranda*, 142 Conn. App. 657, 664–65, 64 A.3d 1268 (convictions for first degree unlawful restraint and second degree strangulation upheld as involving separate and distinct incidents), cert. granted, 310 Conn. 902, 75 A.3d 29 (2013).

In this case on appeal, both the state and the defendant agree that the defendant could not be convicted under the facts presented of strangulation in the second degree, unlawful restraint in the first degree, and assault in the third degree. All three were charged in the same information and there was evidence that the defendant, with the intent to prevent the victim from breathing or restricting blood circulation, did impede her ability to breathe because she passed out and blood circulation was restricted, evidenced by blood in her mouth and petechial hemorrhaging.

The defendant further contends that because "[t]here is no language in the statutory prohibition that would impute greater or lesser significance to [strangulation in the second degree, unlawful restraint in the first degree, and assault in the third degree]" this court is without guidance to determine which of those convictions for those crimes may stand, and which must fall, pursuant to § 53a-64bb (b). We disagree. The statutory

structure suggests that the legislature, through § 53a-64bb (b), intended to permit a conviction for strangulation, assault or unlawful restraint—but not convictions for all three when charged in the same information and stemming from the same incident.

In its brief, the state concedes that the same act served as the basis for the charges of strangulation, assault, and unlawful restraint, because the prosecution's closing argument at trial stated this. The enactment of a later statute specifically addressing and tailored to strangulation as a separate crime, and prohibiting assault and unlawful restraint convictions, is a strong indication to us that it is the strangulation conviction which should be the one of the three convictions that stands. Accordingly, the judgment of conviction for unlawful restraint in the first degree and assault in the third degree must be reversed.

### B

The defendant and the state disagree, however, on the appropriate remedy. The defendant argues that he is entitled to a new trial, or, alternatively, a new sentencing proceeding. The state argues that a new sentencing proceeding is unnecessary in light of the trial court's clear sentencing intent. Rather, the state urges this court to remand the case to the trial court with instructions to vacate only the unlawful restraint in the first degree and assault in the third degree convictions and accompanying sentences. We agree with the state that neither a new trial nor a new sentencing proceeding is necessary.

Where a defendant is convicted of multiple crimes, some of which are later determined to be invalid, only the affected convictions must be vacated; the other lawful convictions may be permitted to stand. *State* v. *Johnson*, 137 Conn. App. 733, 757–58, 49 A.3d 1046, cert. granted on other grounds, 307 Conn. 927, 55 A.3d 568 (2012), cert. granted, 308 Conn. 938, 66 A.3d 881 (2013).

We have held that when some of a defendant's convictions are reversed, and the trial court clearly intended that a nonreversed conviction "control its sentencing scheme," remand for resentencing is not necessary where reversing the improper convictions and vacating the accompanying sentences will not frustrate the trial court's intent. *State* v. *Dieudonne*, 109 Conn. App. 375, 378–79, 952 A.2d 69, cert. denied, 289 Conn. 924, 958 A.2d 154 (2008).[4] We said in *Dieudonne* that when a court's intent is clear that a nonreversed conviction should control its sentencing scheme, "we can discern no reason why the court should again be required to exercise its sentencing discretion." Id., 379; see also *State* v. *Martin M.*, 143 Conn. App. 140, 147–48, 70 A.3d 135 (remand remedy following reversal of conviction unnecessary when it was clear that trial court did not

rely on reversed conviction when imposing sentence and sentence imposed for reversed conviction was served concurrently, thus having "essentially no punitive effect"), cert. denied, 309 Conn. 919, 70 A.3d 41 (2013).

In the present case, it is evident that the court intended that the defendant's sentence for burglary in the first degree be the controlling sentence. The court sentenced the defendant to twenty years of incarceration, suspended after nine years, and five years of probation, for the burglary conviction. The defendant was sentenced to shorter, concurrent sentences for his other four convictions. The court specifically explained: "All those sentences are concurrent with each other, the effective sentence is twenty years suspended after nine, [with] five years probation . . . ." It is evident from the record, therefore, that the sentence imposed for burglary was designed to be the controlling sentence. As such, remanding the case for a new sentencing proceeding is unnecessary and would constitute a waste of judicial resources.

## III

Finally, the defendant claims that the court erred in its instruction to the jury on the requirement of a unanimous verdict.[5] Specifically, the defendant claims that given the alternative acts charged for each offense, the trial court erred in failing to instruct the jury that it must unanimously agree on the factual basis to find the defendant guilty of burglary in the first degree, strangulation in the second degree, and risk of injury to a child. We disagree.

"In *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991), our Supreme Court set forth the applicable principles governing specific unanimity charges: [W]e have not required a specific unanimity charge to be given in every case in which criminal liability may be premised on the violation of one of several alternative subsections of a statute. We have instead invoked a multipartite test to review a trial court's omission of such an instruction. We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Brodia*, 129 Conn. App. 391, 402, 20 A.3d 726, cert. denied, 302 Conn. 913, 27 A.3d 373 (2011).

The defendant contends that the court's instructions

were inadequate because they did not instruct the jury that it had to unanimously agree on the factual basis to find him guilty of burglary in the first degree, strangulation in the second degree, and risk of injury to a child. With respect to the charge for burglary, the defendant contends that given the alternative evidence presented at trial, the court erred by failing to the instruct the jury that it "needed to be unanimous in deciding whether the defendant either knowingly and unlawfully entered the building or whether he, alternatively, knowingly and unlawfully remained in the building."[6] With respect to the charge for strangulation, the defendant argues that given the alternative evidence presented at trial, the court erred by not instructing the jury that it "needed to be unanimous in deciding [1] whether the defendant either intended to impede [the victim's] ability to breathe, or, alternatively, intended to restrict her blood circulation; and [2] whether the defendant either impeded [the victim's] ability to breathe, or alternatively, restricted her blood circulation."[7] Finally, with respect to the charge of risk of injury to a child, again, given the alternative evidence presented at trial, the defendant claims error in that the court "failed to instruct [the jury] that [it] also needed to be unanimous in deciding whether the defendant either caused the child to be placed in a situation inimical to the child's physical welfare, or alternatively, the defendant permitted the child to be placed in a situation inimical to the child's physical welfare."[8] We are not persuaded.

As was the case in *Famiglietti*, "the court's . . . final charge included a general unanimity instruction but did not specifically relate this requirement to the alternative elements [for each] of the [crimes] with which the defendant has been charged." *State* v. *Famiglietti*, supra, 219 Conn. 619. Moreover, our thorough review of the court's jury charge reveals a complete absence of any language expressly sanctioning a nonunanimous verdict, which is fatal to the defendant's claim on appeal. "With respect to the first prong of *Famiglietti*, namely, whether the trial court's jury instructions have sanctioned a nonunanimous verdict, it is well established that the absence of language *expressly sanctioning* a nonunanimous verdict means that the defendant has not met the first part of the *Famiglietti* test. . . . Indeed, if the trial court did not sanction a nonunanimous verdict we need not address the other parts of the *Famiglietti* test." (Emphasis in original; internal quotation marks omitted.) *State* v. *Brodia*, supra, 129 Conn. App. 403. Furthermore, the court instructed the jury no less than seven times throughout the course of the trial that its verdict must be unanimous; including on all three charges the defendant now claims were erroneous. Therefore, the defendant's claim fails as a matter of law.

The judgment is reversed with respect to the convictions for unlawful restraint in the first degree and

assault in the third degree, and the case is remanded with direction to vacate those convictions and the sentences thereon. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The commentary to the Connecticut Code of Evidence § 4-5 (b) indicates: "For other crimes, wrongs or acts to be admissible, the court must determine that the evidence is probative of one or more of the enumerated purposes for which it is offered, and that its probative value is not outweighed by the prejudicial effect." See also *State* v. *McPhee*, 58 Conn. App. 501, 510, 755 A.2d 893, cert. denied, 254 Conn. 920, 759 A.2d 1026 (2000).

[2] The defendant also argues that when the court overruled his objection, it went against its previous ruling, and, therefore, was in contravention of the law of the case doctrine. The law of the case doctrine is a prudential limitation which encourages the court to avoid contradicting a prior interlocutory ruling. See *Dept. of Transportation* v. *White Oak Corp.*, 141 Conn. App. 738, 764–65, 62 A.3d 599, cert. granted on other grounds, 309 Conn. 910, 69 A.3d 307 (2013). The state asserts that the doctrine is not applicable in this type of situation. Because we conclude that the court's ruling was consistent with its prior rulings, we need not determine whether the law of case doctrine could be applicable.

[3] See Conn. Code Evid. § 4-5 (b).

[4] *Dieudonne* relied on our Supreme Court's decision in *State* v. *Chicano*, 216 Conn. 699, 714, 584 A.2d 424 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991), abrogated on other grounds, *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013). We read *Polanco* to be confined to the specific issue our Supreme Court addressed in that case, namely, merger of convictions for greater and lesser included offenses. *State* v. *Polanco*, supra, 248–49 and 248 n.3. In *Polanco*, relying principally on the United States Supreme Court's decision in *Rutledge* v. *United States*, 517 U.S. 292, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996), our Supreme Court held that, "when a defendant is convicted of greater and lesser included offenses, the trial court shall vacate the conviction for the lesser offense rather than merging it with the conviction for the greater offense." *State* v. *Polanco*, supra, 260. None of the crimes at issue here are lesser included offenses. Accordingly, we do not believe that *Polanco* or *Rutledge* vitiates our holding in *Dieudonne*.

[5] The defendant raises this unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), which authorizes certain constitutional claims to be made for the first time on appeal. The state does not contest its reviewability, but maintains that the defendant's claim fails as a matter of law under *State* v. *Famiglietti*, 219 Conn. 605, 595 A.2d 306 (1991).

[6] On the charge of burglary in the first degree, the court instructed the jury: "The state must prove beyond a reasonable doubt that the defendant (1) unlawfully entered or remained in a building; (2) that he had the intent to commit a crime therein, and (3) that he intentionally inflicted a bodily injury on the victim."

[7] On the charge of strangulation in the second degree, the court instructed the jury: "The state must prove beyond a reasonable doubt that (1) the defendant restrained [the victim] by the neck or throat; (2) that he specifically intended to impede [the victim's] ability to breathe or to restrict her blood circulation; [and] (3) that he impeded [the victim's] ability to breathe or restricted her blood circulation."

[8] On the charge of risk injury to a child, the court instructed the jury: "The state must prove beyond a reasonable doubt that (1) the defendant wilfully or unlawfully caused or permitted the minor to be placed in a situation, (2) the situation endangered her health, and (3) the minor was under sixteen years of age at the time."